PEARSON, J.

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CAROLE L. HUGHES, *et al.,* | ) | |
| | ) | CASE NO.  5:10CV1781 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| MICHAEL B. COLBERT, *etc.,*[1] | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF Nos. 6 and 15] |


This action is before the Court upon Defendant's Motion to Dismiss (ECF No. 6), filed

on November 5, 2010.[2]  Defendant moves the Court to abstain from deciding this case or, in the

alternative, dismiss the Complaint (ECF No. 1) pursuant to Fed. R. Civ. P. 12(b)(6).  For the

reasons set forth below, Defendant's Motion is granted.

---

[1] Douglas E. Lumpkin was the original defendant.  He was sued in an official capacity as a public officer.  Michael B. Colbert succeeded Lumpkin as Director of the Ohio Department of Job and Family Services ("ODJFS").  Pursuant to Fed. R. Civ. P. 25 (d), Colbert's name has been automatically substituted as a party.  *See* ECF No. 20 at 2.

[2] In June 2011, the Court converted the motion to dismiss into a motion for summary judgment.  *See* Minutes of Proceedings, dated June 21, 2011 (". . . Plaintiffs' counsel agreed that if conversion of pending motion to a Rule 56 were required, the Court has sufficient pleadings to do so.  Defense counsel made no objection.").  On May 9, 2012, the Court furnished formal notice to the parties and lead counsel of record that it is treating Defendant's motion as one for summary judgment.  *See* Order (ECF No. 16) at 2.
   The Court has reviewed the memorandum in support, memorandum in opposition (ECF No. 7), reply memorandum (ECF No. 8), supplemental memorandum in support (ECF No. 19), and supplemental memorandum in opposition (ECF No. 18).

(5:10CV1781)

This action is also before the Court upon Plaintiffs' Motion for Injunction (ECF No. 15), filed on May 3, 2012.[3]  Plaintiffs move the Court to enjoin Defendant from violating and continuing to violate federal law under Title XIX of the Social Security Act, including 42 U.S.C. §§ 1382a(a)(2)(B), 1396p(c)(1)(A), (F) and (G), as enacted, as interpreted by the courts, and as interpreted by the United States Department of Health and Human Services.  In the alternative, Plaintiffs request that the Court issue a decision on the merits based on the stipulations of Counsel offered during the telephone conference held on June 21, 2011.  *See* ECF No. 15 at 10.[4] For the reasons set forth below, Plaintiffs' Motion is denied.

## I. Background

Plaintiff Carole L. Hughes is a resident at Hanover House Nursing and Rehabilitation Center, a long-term care nursing facility located in Massillon, Ohio.  ECF No. 15-2.  Plaintiff Harry Hughes is the spouse of Carole Hughes.  ECF No. 1 at ¶ 4.  Plaintiff Lester J. Bardin is a resident of ManorCare – Belden Village nursing center located in Canton, Ohio.  ECF No. 15-3. Plaintiff Thelma Bardin is the spouse of Lester Bardin.  ECF No. 1 at ¶ 15.

In November 2005, Mrs. Hughes was admitted to the nursing facility in Massillon.  ECF No. 1 at ¶ 5.  The countable resources of Mr. and Mrs. Hughes at the date of institutionalization

---

[3]  The Court has reviewed the memorandum in support (ECF No. 15-1), affidavit of Harry A. Hughes (ECF No. 15-2), affidavit of Thelma R. Bardin (ECF No. 15-3), supplemental memorandum in support (ECF No. 18), memorandum in opposition (ECF No. 20), and notice of filing information regarding Mrs. Hughes' eviction proceeding (ECF No. 21) (including the affidavit of Kimberly Irwin (ECF No. 21-2)).

[4]  Plaintiffs request that the Court construe their memoranda contra and all subsequent pleadings, procedurally, as a cross-motion for summary judgment in favor of Plaintiffs.  ECF No. 18 at 1 and 7.

(5:10CV1781)

were $518,380.81.  Of this amount, $471,419.35 consisted of Mr. Hughes's IRA.  ECF No. 1 at ¶ 6.  After Mrs. Hughes entered into the nursing home, Mr. Hughes paid for nursing home care for three years and eleven months.  ECF No. 1 at ¶ 8.

On May 31, 2009, the amount in Mr. Hughes's IRA was $272,450.14.  ECF No. 1 at ¶ 9. On June 9, 2009, three months before Mrs. Hughes applied for Medicaid, Mr. Hughes used $175,000 of the couple's combined resources from his IRA account to purchase an IRA annuity for himself (ECF No. 1-2), being an immediate single premium annuity and guaranteed for nine years, shorter than his life expectancy.  Mr. Hughes is the owner of the annuity and income recipient, Mrs. Hughes is the contingent beneficiary, and the State of Ohio is the second contingent beneficiary.  ECF No. 1-2 at 2.  The IRA annuity pays $1,728.42 each month to Mr. Hughes.  The annuity was effective on June 28, 2009 and the guaranteed payment period expires January 28, 2019.  ECF No. 1 at ¶¶ 10 and 12.

On September 5, 2009, Mr. Bardin was admitted to the nursing facility in Canton.  ECF No. 1 at ¶ 16.  The combined resources of Mr. and Mrs. Bardin at the date of institutionalization were $539,483.60.  ECF No. 1 at ¶ 17.  In January 2010, several weeks after Mr. Bardin applied for Medicaid, Mrs. Bardin used $373,583.84 of the couple's combined resources to purchase an annuity for herself (ECF No. 1-4), being an immediate single premium annuity and guaranteed for five years, shorter than her life expectancy.  Proceeds used to purchase the annuity were from the sale of U.S. Savings Bonds in the amount of $362,810 and the surrender value of a life insurance policy in the amount of $10,773.84.  Mrs. Bardin is the owner of the annuity and recipient of the income until her death.  After Mrs. Bardin's death, Mr. Bardin is the primary

3

(5:10CV1781)

beneficiary, and the State of Ohio is the contingent beneficiary.  ECF No. 1-4 at 9.  The annuity

provides Mrs. Bardin a monthly income of $3,397.17.  The annuity was effective on January 4,

2010.  ECF No. 1 at ¶¶ 19 and 21.

When a couple seeks Medicaid eligibility for a spouse that is in a nursing home,

otherwise known as the "institutionalized spouse," the Medicaid rules specify how much of the

couple's assets the other spouse — the "community spouse" — is allowed to retain for her own

use.  This is called the "community spouse resource allowance" ("CSRA").  *Wisconsin Dept. of

Health and Family Services v. Blumer*, 534 U.S. 473, 482-83 (2002); *see also*  Ohio Admin.

Code § 5101:1-39-36.1(C)(3).  Congress enacted the CSRA provisions in order to "protect

community spouses from 'pauperization' while preventing financially secure couples from

obtaining Medicaid assistance."  534 U.S. at 480; *see also* 42 U.S.C. § 1396r-5.

The CSRA maximum at the time both Mrs. Hughes and Mr. Bardin applied for Medicaid

was $109,560.  Ohio Admin. Code § 5101:1-39-36.  The remainder of the couple's assets are to

be used for the institutionalized spouse's care until that spouse has less than $1500 — at which

point Medicaid eligibility is possible.  If the community spouse utilizes resources above the

amount allocated to her as the CSRA, then it is called an "improper transfer" because resources

have been transferred away from the institutionalized spouse's share.

When an individual applies for Medicaid nursing home payment, one of three conclusions

is reached by the agency:  (1) her resources are below the limit and she is eligible; (2) her

resources are above the limit and she is not eligible (she is deemed to have "excess resources"),

or (3) within the past five years she had too many resources but divested herself of enough of

4

(5:10CV1781)

those resources to be below the limit now (*i.e.*, she made an "improper transfer" which results in Medicaid eligibility but temporary denial of nursing home coverage).  *See* Ohio Admin. Code §§ 5101:1-39-05 and 5101:1-39-07.[5]  An improper transfer can be found only after the applicant has been determined eligible for Medicaid (and eligibility means that she has resources at or under the individual resource limit).

As previously stated, Mr. Hughes and Mrs. Bardin (the community spouses) each bought an annuity for themselves.  Plaintiffs contend that the annuities complied with federal Medicaid law.  ECF No. 18 at 2.  Defendant contends that the purchases were made with assets in excess of their CSRA's.  According to Defendant, Mr. Hughes and Mrs. Bardin exceeded their CSRA by $65,440 and $274,797, respectively.  ECF No. 6 at 6 and 7.  The Stark County Department of Job and Family Services ("County") determined these were "improper transfers" because Mr. Hughes had used $65,440 from the pool of resources that were to remain available for Mrs. Hughes's care, ECF No. 1 at ¶ 14, and Mrs. Bardin had used $274,797 from the pool of resources that were to remain available for Mr. Bardin's care, ECF No. 1 at ¶ 22.  The County

---

[5]  Ohio Admin. Code § 5101:1-39-07(G)(3) does not allow a community spouse to use resources above the CSRA and turn it into income, such as a payment stream from a promissory note, without a penalty.  It states:

> Any amount of a couple's resources exceeding the CSRA may not be
> converted to another form for the purpose of generating additional income
> for the community spouse unless permitted in a hearing decision issued
> under Chapter 5101:6-7 of the Administrative Code.

(5:10CV1781)

approved the Medicaid applications, but with "restricted coverage,"[6] meaning Mrs. Hughes and

Mr. Bardin are eligible for medical care but must serve a waiting period before Medicaid will pay

their nursing home bills.  ECF Nos. 1-3 and 1-5.[7]  The County found that Mr. Hughes' and Mrs.

Bardin's purchase of an annuity was an "improper transfer."  ECF Nos. 1-3 at 2 and 1-5 at 2.

Contrary to assertions in the Complaint (ECF No. 1 at ¶¶ 1.A., 22-28, 33, 34, and 36) and

argument in the memorandum in opposition (ECF No. 7 at 9 and 15), ODJFS has never

contended that the annuities at issue here are still countable resources.  ECF No. 6 at 13 and ECF

No. 19 at 25.  Mrs. Hughes and Mr. Bardin appealed the County's decisions through the

administrative appeal process, which affirmed the County's decisions.

Thereafter, Mrs. Hughes and Mr. Bardin filed administrative appeals of ODJFS'

decisions imposing a period of restricted Medicaid coverage pursuant to Ohio Rev. Code

§§ 119.12 and 5101.35; and Ohio Admin. Code § 5101:6-9-01.  See Carole L. Hughes v. ODJFS,

Stark County, Ohio Common Pleas Court Case No. 2010CV01763 (filed May 5, 2010) and

Lester Bardin v. ODJFS, Stark County, Ohio Common Pleas Court Case No. 2010CV03352

(filed Sept. 13, 2010).  These administrative appeals directly relate to whether the purchases of

---

[6]  Restricted coverage means that the individual is ineligible for nursing home
payments, but is still eligible for other covered Medicaid services, such as doctor office
visits, medications, and durable medical equipment.  See Ohio Admin. Code §
5101:1-39-07(I).

[7]  Mrs. Hughes and Mr. Bardin have been eligible for Medicaid since September
2009 and January 1, 2010, respectively.
It is to be noted that ODJFS is already paying full Medicaid benefits for Mrs.
Hughes.  Medicaid has paid for Mrs. Hughes' nursing facility care since August 2010.
See ECF No. 21-2 at ¶ 4.

(5:10CV1781)

the annuities were properly considered improper transfers.  Mrs. Hughes and Mr. Bardin allege

violations of Ohio Admin. Code §§ 5101:1-39-07, 5101:1-39-22.7, and 5101:1-39-22.8; and

42 U.S.C. §§ 1382a(a)(2)(B), 1396p(c)(1)(A), (F) and (G), and 1396p(c)(2)(B)(i).  Rather than

proceeding through the administrative appeal process, Mrs. Hughes and Mr. Bardin filed motions

in their respective cases to stay the administrative appeals until the case at bar is decided.

Though ODJFS opposed those motions, the state court granted them, and both state court cases

have been stayed since 2010.

Plaintiffs bring the within action pursuant to 42 U.S.C. § 1983 against Defendant in his

official capacity as Director of ODJFS.  On August 12, 2010, Plaintiffs filed a four-count

Complaint for Declaratory and Injunctive Relief (ECF No. 1) in the case at bar.  Plaintiffs allege

that Defendant is violating federal and state Medicaid law through his interpretation and

implementation of the annuity provisions of the Medicaid Act.  Count I is for violation of

Plaintiffs' rights under the Medicaid Act.  It alleges that

> 34.  Defendant, by determining that the annuities purchased by [Mr. Hughes and
> Mrs. Bardin] — which comply with all of the requirements in the Medicaid Act
> — are nevertheless countable resources rendering Plaintiffs ineligible for
> Medicaid, has violated and is violating the Medicaid Act, as well as the federal
> policies and regulations pertaining to annuities.

ECF No. 1 at 8.

Count II contends that an Ohio regulation is preempted by the Medicaid Act.  It alleges that

> 39.  As interpreted, O.A.C. § 5101:1-39-07( G) is a violation of Plaintiffs' rights
> under the Medicaid Act.  They are preempted by the Medicaid Act and invalid
> under the supremacy clause of Article VI of the Constitution of the United States.

ECF No. 1 at 9.

7

(5:10CV1781)

Count III, which addresses income issues, maintains that Ohio's regulations are preempted by the

Medicaid Act.  It alleges that

> 42.  As interpreted by Defendant, O.A.C. § 5101:1-39 et seq. is a violation of
> Plaintiffs' rights under the Medicaid Act.  It is preempted by the Medicaid Act
> and invalid under the supremacy clause of Article VI of the Constitution of the
> United States.

ECF No. 1 at 10.

Finally, Count IV asserts an equal protection violation.  It alleges that

> 44.  Defendant's administration of the provisions of O.A.C. §§ [5101:1-39-07],
> 5101:1-39-22.7 and [5101:1-39-22.8] and any other regulation arbitrarily
> discriminates between beneficiaries of state retirement systems and beneficiaries
> of retirement accounts commonly known as 401(k)s and IRAs.

ECF No. 1 at 10.

In January 2011, the above-entitled action was reassigned from Judge Sara Lioi to the

undersigned pursuant to General Order 2011-4.

## II.  Standards of Review

### A.  Summary Judgment

Summary judgment is appropriately granted when the pleadings, the discovery and

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

see also *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required

to file affidavits or other similar materials negating a claim on which its opponent bears the

burden of proof, so long as the movant relies upon the absence of the essential element in the

pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v.*

8

(5:10CV1781)

*Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact.  *Id.* at 248.  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict.  *Id.*  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material

9

(5:10CV1781)

fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere

scintilla of evidence in support of the non-moving party's position ordinarily will not be

sufficient to defeat a motion for summary judgment.  *Id.*

## B.  Injunction

Turning to Plaintiffs' Motion for Injunction (ECF No. 15), the purpose of such relief "is

always to prevent irreparable injury so as to preserve the court's ability to render a meaningful

decision on the merits."  *United Food & Comm. Workers Union v. Southwest Ohio Reg. Transit

Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (quoting *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925

(6th Cir. 1978).  Four factors apply:

> (1) whether the movant has demonstrated a likelihood of success on the merits;
> (2) whether the movant will suffer irreparable harm if the injunction is not issued;
> (3) whether the injunction will cause substantial harm to others if issued; and
> (4) whether granting the injunction will serve the public interest.

*Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).  "These factors

are not prerequisites that must be met, but are interrelated considerations that must be balanced

together."  *Northeast Ohio Coalition for Homeless & Service Employees Intern. Union v.

Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (quoting *Mich. Coalition of Radioactive Material

Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

Since Defendant's Motion to Dismiss (ECF No. 6) and Plaintiffs' Motion for Injunction

(ECF No. 15) are based on the same predicate of facts and law, the Court will analyze the legal

issues and then apply the respective standards of review in deciding each motion.

10

(5:10CV1781)

## III.  Analysis

### A.  *Younger* Abstention Doctrine

Defendant argues the Court should abstain from exercising jurisdiction over Plaintiffs'

claims pursuant to the *Younger* abstention doctrine because Plaintiffs have cases pending in state

court against Defendant involving similar claims.  ECF No. 6 at 8-10.  Plaintiff counters *Younger*

does not apply to the facts of this case.  ECF No. 7 at 2.  The Court finds that the *Younger*

abstention doctrine does not apply to the instant matter and the Court need not abstain from

deciding the case at bar.

The *Younger* abstention doctrine requires a federal court to abstain from hearing a case

that interferes with certain state proceedings.  *Younger v. Harris*, 401 U.S. 37 (1971).  A federal

court must abstain from exercising jurisdiction when (1) there is a pending or ongoing state

proceeding that is judicial in nature; (2) the state proceeding implicates important state interests;

and (3) the state proceeding affords an adequate opportunity to raise any constitutional issues.

*Middlesex County Ethics Committee v. Garden State Bar Ass'n.*, 457 U.S. 423, 432 (1982).

When a pending or ongoing state proceeding is remedial in nature, rather then coercive,

*Younger* abstention does not apply.  *Ohio Civil Rights Commission v. Dayton Christian Schools,*

*Inc.*, 477 U.S. 619, 627 n. 2 (1986).  For the purposes of *Younger* abstention, an ongoing state

proceeding is coercive when initiated by the state for the purpose of enforcing compliance with a

rule or regulation, and the defendant in the initial state action becomes a federal plaintiff

attempting to enjoin the state court proceeding.  *Devlin v. Kalm*, 594 F.3d 893, 895 (6th Cir.

2010) (citing *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 522 (1st Cir. 2009); *Marks*

11

(5:10CV1781)

*v. Stinson*, 19 F.3d 873, 885 (3d Cir. 1994) ("[a] federal plaintiff may pursue parallel actions in the state and federal courts so long as the plaintiff does not seek relief in the federal court that would interfere with the state judicial process").

Because Plaintiffs' claims in the case at bar are remedial rather than coercive, the *Younger* abstention doctrine does not apply and abstention is inappropriate.  *Brown ex rel. Brown v. Day*, 555 F.3d 882, 889 (10th Cir. 2009) (holding *Younger* abstention inapplicable to a Medicaid beneficiary's federal case challenging termination of benefits pursuant to § 1983, even though beneficiary had also filed a similar state court action, because "[the federal plaintiff] seeks not to enjoin the state proceedings, but to secure relief from the state's allegedly unlawful conduct by recovering her Medicaid benefits" and that such an action was remedial, not coercive).

**B.  Grounds for Dismissal**

If the Court does not abstain, Defendant sets forth two arguments for dismissing all of Plaintiffs' claims for failure to state a claim upon which relief can be granted.  First, Defendant argues the statutes cited by Plaintiffs do not confer enforceable rights under 42 U.S.C. § 1983. Second, according to Defendant, the statutes do not apply in this situation and ignore the other federal statutes which expressly prohibit a community spouse from keeping resources above the CSRA.  Defendant also sets forth a separate argument for dismissing the alleged equal protection violation (Count IV).

(5:10CV1781)

**1. The statutes cited by Plaintiffs confer enforceable rights under 42 U.S.C. § 1983.**

Defendant argues that all claims under 42 U.S.C. §1983 should be dismissed because Plaintiffs can not bring a §1983 claim under any of the federal statutes they claim ODJFS is violating, *i.e.*, 42 U.S.C. §§ 1382(a)(2)(B), 1396p(c)(1)(F), 1396p(c)(1)(G), 1396p(c)(2)(B)(i), 1396p(d)(2)(A)(ii), and 1396p(d)(2)(B).  Only two of the statutes even reference annuities, and Defendant argues the language in the pivotal annuity laws found at 42 U.S.C. §§ 1396p(c)(1)(F) and 1396p(c)(1)(G)[8] clearly indicate that they only apply when the institutionalized spouse is the holder/owner of the annuity.  Therefore, according to Defendant, even if the Court finds the cited statutes create enforceable rights, the Plaintiffs do not belong to the class of beneficiaries that the statutes create rights for, especially where a community spouse is not the intended beneficiary of 42 U.S.C. §§ 1396p(c)(1)(F) and 1396p(c)(1)(G).

Notwithstanding Defendant's interpretation of the statutes at issue, courts have held that the Medicaid Act confers enforceable rights under 42 U.S.C. §1983.  *See Harris v. Olszewski*, 442 F.3d 456, 461-62 (6th Cir. 2006) (Medicaid Act's freedom-of-choice provision created private rights that recipients could enforce under § 1983); *Burkholder v. Lumpkin*, No. 3:09CV01878, 2010 WL 522843 (N.D. Ohio Feb. 9, 2010) (Carr, C.J.) (Medicaid case brought under § 1983 and the Supremacy Clause of the U.S. Constitution, U.S. Const. art. 4, cl. 2.); *Lewis v. Rendell*, 501 F. Supp.2d 671, 685 (E.D. Pa. 2007) (concluding that 42 U.S.C. §§ 1396p(d)(4), 1396d(a), and 1396a(a)(8), (a)(10), and (a)(18) confer enforceable rights under § 1983); *Geston v. Olson*, --- F.

---

[8] Congress describes the owner of a compliant annuity as someone "who has applied for medical assistance with respect to nursing facility services or other long-term care services." 42 U.S.C. § 1396p(c)(1)(G).

(5:10CV1781)

Supp.2d ----, No. 1:11-cv-044, 2012 WL 1409344, at *18 (D. N.D. April 24, 2012) (finding that

42 U.S.C. §§ 1396a(a)(10)(C)(i), 1396a(r)(2)(B) and 1396r–5(b)(1) create federal rights

enforceable under § 1983); *Jackson v. Selig*, No. 3:10-CV-00276, 2010 WL 5346198 (E.D.Ark.

Dec. 22, 2010) (denying motion to dismiss in action alleging that defendant violated 42 U.S.C.

§§ 1396(c)(1)(A), 1396(c)(2)(B)(I), 1396(d)(2)(A)(ii) and (B), 1396p(c)(1)(F)(I) and (ii),

1396p(c)(1)(G) and the federal policies and regulations pertaining to annuities); *James v.

Richman*, 547 F.3d 214, 217-18 (3rd Cir. 2008) (not required to exhaust state administrative

remedies before bringing § 1983 action to permanently enjoin state agency from denying

Medicaid benefits); *Weatherbee, ex.rel. Vecchio v. Richman*, 595 F. Supp.2d 607 (W.D. Pa. 2009)

(institutionalized spouse brought action for declaratory and injunctive relief pursuant to § 1983

alleging that administrator of state's Medicaid program improperly ruled that annuity purchased

by community spouse was available resource to be counted in determining institutionalized

spouse's Medicaid eligibility); and *Morris v. Oklahoma Dept. of Human Services*, 758 F. Supp.2d

1212 (W.D. Okla. 2010) (Medicaid claimant brought § 1983 action seeking declaratory and

injunctive relief that denial of benefits was wrongful and was preempted by federal law).  This

Court finds the statutes cited by Plaintiffs confer enforceable rights under 42 U.S.C. § 1983.

### 2. Ohio's Medicaid Statutes and Rules are Consistent With Federal Law and ODJFS Has Properly Interpreted and Applied Them.

Plaintiffs claim that ODJFS' interpretation and implementation of Ohio's Medicaid laws

and rules are contrary to federal law and that the federal law should preempt the Ohio law.  ECF

No. 1 at ¶¶ 32-42.  Plaintiffs argue that ODJFS is not following federal law and is misinterpreting

Ohio law because they contend that these laws allow community spouses like Mr. Hughes and

14

(5:10CV1781)

Mrs. Bardin to purchase annuities.  Defendant counters that Mr. Hughes and Mrs. Bardin are

attempting to shelter resources by converting them into an income stream for themselves.

Even if the federal annuity laws that Plaintiff relies on apply to a community spouse, and

they do not, the annuity laws would be superseded by the CSRA laws that cap a community

spouse's share of a couple's resources.  *Burkholder*, 2010 WL 522843 at *4.  Due to the fact that

special rules apply for an applicant who is an institutionalized spouse, Congress resolved any

potential conflicts by expressly providing that the CSRA provisions supersede all inconsistent

Medicaid provisions.  42 U.S.C. § 1396r-5 (enacted in 1988) provides in pertinent part:

(a) Special treatment for institutionalized spouses

(1) Supersedes other provisions

In determining the eligibility for medical assistance of an institutionalized
spouse (as defined in subsection (h)(1) of this section), *the provisions of
this section supersede any other provision of this subchapter* (including
sections 1396a(a)(17) and 1396a(f) of this title) which is inconsistent with
them.

(Emphasis added.)

Congress made significant changes to the Medicaid rules relating to annuities and the

transfer of assets when it passed the Deficit Reduction Act of 2005 ("DRA").  The DRA amended

Medicaid law by adding provisions to 42 U.S.C. § 1396p that address annuities.  One provision,

§ 1396p(c)(1)(F), adds to the subsection on improper transfers by providing that "purchase of an

annuity shall be treated as the disposal of an asset for less than fair market value unless" certain

criteria are met.  The language in this provision makes clear, however, that the annuity can only be

purchased by the institutionalized spouse.  This is evident by the language in

15

(5:10CV1781)

§ 1396p(c)(1)(F)(ii) that requires the State to be the remainder beneficiary of an annuity or to be in second position behind a "community spouse."[9]

While the Medicare Catastrophic Coverage Act ("MCCA") does not allow a community spouse's income to be attributed to the institutionalized spouse, it is irrelevant in the case at bar because, at the date of institutionalization (which is the significant date when the couple's resources are divided), the money used to buy the annuity was still a resource. 42 U.S.C. § 1396r-5(b)(1). Mr. Hughes and Mrs. Bardin transferred resources above their CSRA and turned it into income after the date of institutionalization, which is the date the CSRA is established. It is irrelevant what form the resources took after the transfer, ODJFS penalized the transfers themselves. This is consistent with the MCCA. The imposition of the periods of restricted coverage were authorized — not to mention compelled — by 42 U.S.C. § 1396r-5(c) and (f), 42 U.S.C. § 1396p(c), and Ohio Admin. Code § 5101:1-39-07(G)(4). This is the method that the federal and Ohio governments developed to address situations in which couples attempt to shield significant assets while claiming to be poor enough to qualify for Medicaid nursing home care. It is irrelevant if the money used to purchase the annuity for Mr. Hughes came from an IRA. A community spouse's IRA is considered part of a couple's countable resources. Ohio Admin. Code 5101:1-39-22.7.

---

[9] 42 U.S.C. § 1396p(c)(1)(F)(ii) provides:
the State is named as such a beneficiary in the second position after the community spouse or minor or disabled child and is named in the first position if such spouse or a representative of such child disposes of any such remainder for less than fair market value.

16

(5:10CV1781)

Finally, the *amicus* brief (ECF No. 15-4) requested from the Department of Health and

Human Services by the United States Court of Appeals for the Second Circuit in *John Lopes v.*

*Department of Social Services*, No. 10-3741 (2d Cir. filed Sept. 15, 2010); *Jackson*, 2010 WL

5346198; and, *Geston*, 2012 WL 1409344, do not affect the determination of the case at bar

because they are distinguishable.  In those cases, the annuities were — unlike here — determined

to be countable resources that affected Medicaid eligibility.  The question in the instant case,

however, is whether ODJFS correctly determined that Mrs. Hughes and Mr. Bardin (the

institutionalized spouses) — although eligible for Medicaid because their resources were low

enough — were subject to a period of restricted coverage because former resources — *i.e.*, cash

— had been improperly transferred to the community spouses in amounts that exceeded the

CSRAs.

### 3. Institutionalized Spouses May Not Transfer Unlimited Assets to a Community Spouse.

In Count II of the Complaint (ECF No. 1), Plaintiffs claim that 42 U.S.C. §

1396p(c)(2)(B)(i) allows institutionalized spouses to transfer unlimited assets to their community

spouse without the transaction being considered an improper transfer.  ECF No. 1 at ¶ 37.  This

Court, however, has already rejected that argument in a case involving an inheritance.

*Burkholder*, 2010 WL 522843.  The plaintiff in *Burkholder* argued that 42 U.S.C. §

1396p(c)(2)(B)(i) allowed for unlimited transfers.  After examining the statutory language,

legislative history and relevant case law, the court held that while § 1396p(c)(2)(B)(i) authorizes,

generally, transfers to spouses, 42 U.S.C. § 1396r-5(f)(1) precludes the transfer of assets to the

community spouse beyond the CSRA.  Section 1396r-5's supersession clause, § 1396r-5(a)(1),

(5:10CV1781)

requires resolution of any inconsistency between it and § 1396p(c)(2)(B) in the former clause's favor.  *Id.* at *2.  The Court makes a similar finding in the case at bar.

In *Morris*, *supra*, an Oklahoma federal court held that the spousal impoverishment provisions of the Medicare Catastrophic Coverage Age, 42 U.S.C. §1396r-5, prohibit the community spouse from purchasing, after an initial eligibility determination, an annuity above that spouse's share.  758 F. Supp.2d at 1215-16.  To hold otherwise, the court reasoned, would "render § 1396r-5's limitation on the community spouse's resources superfluous."  *Id.* at 1216.

Just as in *Morris*, Mrs. Bardin purchased her annuity after the date Mr. Bardin applied for Medicaid.  ECF No. 1 at ¶¶ 19 and 21.  Mr. Hughes purchased his annuity after the date of Mrs. Hughes' institutionalization, but before the date of her Medicaid application.  ECF No. 1 at ¶¶ 10 and 12.  The *Morris* court makes clear that it would have found the same result, regardless of when the community spouse purchased the annuity.  The court wrote in a footnote "[e]ven if Plaintiffs had transferred their assets into an annuity for Mr. Morris before applying for Medicaid, this Court would find that the limitations imposed on and division of assets determined in § 1396r-5 limit transfers of assets under the § 1396p(c) exceptions above the CSRA once it is determined."  *Id.* at 1216-17, n.4.  This Court also finds that the limitations in § 1396r-5 prevent Mr. Hughes and Mrs. Bardin (community spouses) from using spousal resources above their CSRA to purchase annuities.

### 4. Plaintiffs Have Failed to State a Valid Claim for an Equal Protection Violation.

In Count IV of the Complaint (ECF No. 1), Plaintiffs claim that Defendant's administration of the federal law through the implementation of Ohio Admin. Code

18

(5:10CV1781)

§§ 5101:1-39-07, 5101:1-39-22.7, and 5101:1-39-22.8 "arbitrarily discriminates between

beneficiaries of state retirement systems and beneficiaries of retirement accounts commonly

known as 401(k)s and IRAs."[10]  ECF No. 1 at ¶ 44.  There is nothing more alleging how

Defendant discriminates between them.

A cause of action fails to state a claim upon which relief may be granted when it lacks

"plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A

pleading must contain a "short and plain statement of the claim showing that the pleader is

entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Fed. R.

Civ. P. 8(a)(2)).  Plaintiff is not required to include detailed factual allegations, but must provide

more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  A pleading that

offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will

not do." *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked

assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  It must contain sufficient

factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129

S.Ct. at 1949.  The plausibility standard is not akin to a "probability requirement," but it asks for

more than a sheer possibility that a defendant has acted unlawfully.  *Twombly*, 550 U.S. at 556.

Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops

---

[10]  According to Defendant, Mrs. Hughes has already raised her Equal Protection
claim in her state court appeal, *Carole L. Hughes v. ODJFS*, Stark County, Ohio
Common Pleas Court Case No. 2010CV01763 (filed May 5, 2010).  ECF No. 6 at 10.

(5:10CV1781)

short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557

(brackets omitted).

Despite Plaintiffs' arguments to the contrary, *see* ECF No. 7 at 10-11, Count IV of the

Complaint (ECF No. 1) does not contain allegations reasonably suggesting Plaintiff might have a

valid claim for an equal protection violation.  Therefore, Count IV of the Complaint (ECF No. 1)

will be dismissed without prejudice.

**C.  Injunction**

Though Plaintiffs claim that one or both of the institutionalized spouses may be evicted

from their nursing facilities, eviction is not imminent for either of them.  On May 8, 2012, the

representative for Mrs. Hughes came to an agreement with Hanover House (the nursing home that

proposed eviction) that her eviction hearing would be continued indefinitely until after the Court

resolves the entire case at bar.[11]  *See* Decision of Hearing Officer (ECF No. 21-1) at 4.  Moreover,

Mr. Bardin's nursing facility has not initiated the discharge and transfer process.

**IV.  Conclusion**

Defendant's Motion to Dismiss (ECF No. 6), treated as a Motion for Summary Judgment,

is granted upon the grounds that there is no genuine issue as to any material fact and the movant is

entitled to a judgment as a matter of law.

---

[11]  Hanover House is not a party to this case.  Furthermore, residents who dispute
their discharge must request a hearing with the Ohio Department of Health, not ODJFS.
Ohio Rev. Code § 3721.161.

20

(5:10CV1781)

Plaintiffs' Motion for Injunction (ECF No. 15) is denied.


IT IS SO ORDERED.


_May 29, 2012_____                              __/s/ Benita Y. Pearson_____
Date                                                       Benita Y. Pearson
                                                              United States District Judge

21